

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2007

# Certain Underwriters v. W Chester Fire Ins

Precedential or Non-Precedential: Precedential

Docket No. 06-1457

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"Certain Underwriters v. W Chester Fire Ins" (2007). *2007 Decisions*. Paper 845.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/845

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-1457

———

CERTAIN UNDERWRITERS
AT LLOYD'S LONDON SUBSCRIBING
TO REINSURANCE AGREEMENTS
R69342, RE2238, RE1240,
RE1249, RE6934, RE2239, RE1250, Third Comprehensive
Catastrophe Liability Excess and Fourth
Comprehensive Catastrophe Liability Excess,
Appellants

v.

WESTCHESTER FIRE INSURANCE COMPANY

(N.J. Civil No. 05-cv-03024)

CERTAIN UNDERWRITERS
AT LLOYD'S LONDON SUBSCRIBING
TO REINSURANCE AGREEMENTS
RE71365, RE2241 A AND B,
AND RE1253F (Special Casualty Contingency),
Appellants

v.

WESTCHESTER FIRE INSURANCE COMPANY

(N.J. Civil No. 05-cv-03025)

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 05-cv-03024, 05-cv-03025)
District Judge: Honorable William H. Walls

Argued January 9, 2007
Before: SLOVITER and RENDELL, Circuit Judges, and
RUFE,[*] District Judge

(Filed: June 12, 2007)

Mary Ann D'Amato   (Argued)
Mendes & Mount
New York, NY  10019

William S. Wachenfeld
Mendes & Mount
Newark, NJ  07102

        Attorneys for Appellants

Carter G. Phillips     (Argued)
Sidley Austin
Washington, DC 20005

Daniel J. Neppl
Sidley Austin
Chicago, IL 60603

Seth G. Park
Siegal, Napierkowski & Park
Mount Laurel, NJ 08054

        Attorneys for Appellee

[*]Honorable Cynthia M. Rufe, Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

At issue in this appeal is whether an arbitrator or a court should decide whether coverage disputes under essentially identical insurance contracts should be arbitrated separately on a contract-by-contract basis or collectively in a consolidated arbitration. The District Court held that the issue of consolidation should be decided by an arbitrator. We believe that decision comports with the direction provided by two Supreme Court decisions and will affirm.

**I.**

The underlying dispute in this matter regards the payment of asbestos claims under reinsurance coverage[1] that Westchester Fire Insurance Company ("Westchester Fire") purchased from certain Lloyd's of London reinsurers (the "Underwriters"). The parties disagree as to how to characterize the coverage at issue. Westchester Fire argues that we are dealing with two reinsurance programs: one being the Comprehensive Catastrophe Treaty, which was made up of six essentially identical contracts covering different time periods in effect from 1972-1985 inclusive, and the other, the Special Contingency Treaty, made up of two essentially identical contracts in effect from 1974-1982 inclusive.

By way of brief introduction to the industry terminology, "[t]here are two types of reinsurance contract: treaty and facultative." North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1199 (3d Cir. 1995). Unlike facultative

---

[1]"In essence, reinsurance is insurance for insurance companies," Cont'l Cas. Co. v. American Nat'l Ins. Co., 417 F.3d 727, 729 n.1 (7th Cir. 2005) (internal citation and quotation marks omitted), whereby a reinsured (here, Westchester Fire), cedes some of its risk to a reinsurer (in this case, the Underwriters), and shares its premium with the reinsurer.

reinsurance, which "entails the ceding of a particular risk or policy[,]" a reinsurance treaty involves an agreement by a reinsurer "to accept an entire block of business from the reinsured. . . . Because a treaty reinsurer accepts an entire block of business, it does not assess the individual risks being reinsured; rather, it evaluates the overall risk pool." Id.

On May 13, 2005, Westchester Fire sent two arbitration demand letters to the Underwriters, each based upon one of the two treaties. Westchester Fire captioned one demand as referencing the "Comprehensive Catastrophe Excess of Loss – All Layers" treaty, effective "7/1/72 – 6/30/85 Inclusive," App. at 169, and the other as referencing the "Special Casualty Contingency Excess of Loss" treaty, effective "7/1/74 – 6/30/82." App. at 220. Each letter stated that Westchester Fire "hereby demands and initiates arbitration under the above captioned Treaty . . . . [Underwriters] are requested and required in accordance with pertinent treaty provisions to name their arbitrator." App. at 169-70; 220-21.

In response to each demand, the Underwriters filed a Verified Petition to Compel Arbitration and Stay Arbitration in the District of New Jersey. Their petition in response to the Comprehensive Catastrophe arbitration demand argued that the Comprehensive Catastrophe Treaty consists of at least six separate contracts, each with its own arbitration clause, and that "[n]one of the agreements provide for the consolidation of arbitration proceedings, let alone consolidation with proceedings under other contracts." App. at 36. They asked that the demand be stayed. Likewise, the petition in response to the Special Casualty Contingency arbitration demand argued that the demand should be stayed, as it was an effort to consolidate a dispute arising under at least two separate reinsurance contracts, each having its own arbitration clause.

The Underwriters' petitions also requested that the court order eight arbitrations in conjunction with the eight contracts the Underwriters had identified – i.e., six separate arbitrations in response to Westchester Fire's demand under the Comprehensive Catastrophe program and two separate arbitrations under the Special Contingency program. The

4

Underwriters asked as well that Westchester Fire "produce all reinsurance agreements within the scope of its arbitration demand[,]" as there may exist "other agreements not presently known to petitioners[,]" App. at 40; 176-77, and sought a declaration that "Westchester may not consolidate proceedings without the consent of all parties to the agreements[.]" Id.

As the basis for its request for arbitration, Westchester Fire argues that the Underwriters have imposed onerous documentation and claim procedures before payment of asbestos claims that they had reinsured, and that these requirements differ from the parties' prior course of dealing. It complains that the Underwriters have subjected it to repetitive audits and requests for information, and have not paid the billings that Westchester Fire submitted. It seeks an award enforcing the payment requirement and confirming that it is under no obligation to meet the extra-contractual documentation or claim procedures that the Underwriters have asserted.

In response to each Underwriters' petition, Westchester Fire cross-moved to compel arbitration. In regard to the Special Contingency petition, Westchester Fire argued that, "[a]lthough the contract wording for the Reinsurance Program varied in certain respects over the years, the contract wording for the Reinsurance Program provides that the contract between the parties is continuous, even though it changes in certain respects over time. Disputes under the Reinsurance Program are to be resolved by arbitration in Morristown, New Jersey." App. at 248. Westchester Fire responded similarly to the Underwriters' Comprehensive Catastrophe petition, arguing that, while "[t]he Reinsurance Program consisted of several layers over the years[,]" the agreement between the parties was continuous and, similarly, called for arbitration in Morristown, New Jersey. App. at 228.

Following consolidation of the two actions, the District Court observed that it was "not presented with the question of whether a valid arbitration agreement exists[,]" but, rather, the question of whether the parties had contractually agreed to "separate arbitrations under the various contractual layers to the reinsurance program or [to] a single consolidated arbitration"

with respect to each petition. App. at 23. This, the District Court concluded, was an issue "for the arbitrators not the courts to decide." Id. It issued an order denying the Underwriters' petitions and granting Westchester Fire's cross-motions to compel arbitration. The order directed the Underwriters to appoint a single arbitrator in response to each of Westchester Fire's arbitration demands, and "proceed promptly with Westchester Fire Insurance Company to identify a single umpire in response" to each arbitration demand. App. at 4. The order also instructed that the "relief granted herein shall not, in any matter, preclude" the Underwriters from applying to the arbitration panel "for the same or similar relief sought in this proceeding nor in any way limit [the] Panel's authority to grant such relief." App. at 5.

## II.

The District Court had jurisdiction under 9 U.S.C. § 203 because, as the parties agree, these actions between domestic Westchester Fire and foreign Underwriters fall within the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208. Bel-Ray Co., Inc. v. Chemrite Ltd., 181 F.3d 435, 439-40 (3d Cir. 1999); see also China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp., 334 F.3d 274, 280 (3d Cir. 2003) (explaining, in regard to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., that "the domestic FAA (chapter 1 of the FAA) is applicable to actions brought under the Convention (chapter 2 of the FAA) to the extent they are not in conflict [pursuant to] 9 U.S.C. § 208").

We have jurisdiction over the Underwriters' appeal under 28 U.S.C. § 1291 and section 16 of the FAA, 9 U.S.C. § 16. Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 102 (3d Cir. 2000). This court exercises "plenary review over the legal questions concerning the applicability and scope of an arbitration agreement." Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 53 (3d Cir. 2001).

## III.

The Underwriters (the reinsurers) argue that the District

6

Court had no authority to order the parties to submit to an arbitral determination of the question of whether future arbitrations on the underlying merits issue would occur in consolidated or contract-by-contract fashion. The Underwriters argue that the arbitration clause in each agreement calls for an arbitration of all issues pertaining to that specific reinsurance contract, which they believe requires an "individually-convened" arbitration. Appellants' Br. at 27. Therefore, they continue, forcing all parties into a unified threshold proceeding in connection with each demand is beyond the scope of what the parties agreed to arbitrate. The issue of consolidated arbitration, they insist, should be presented to individual arbitration panels convened in accordance with each contract.

In contrast to the Underwriters, Westchester Fire argues that the question of whether the contracts should be arbitrated collectively or individually is itself a determination that must be made by an arbitrator. In the alternative, Westchester Fire argues that, were we to decide that it is the District Court that must make the consolidation decision, New Jersey law "authorizes court-ordered consolidation of multiple arbitrations under multiple contracts[.]" Appellee's Br. at 39. In light of our determination, we need not reach this issue.

"[A]rbitration is a creature of contract, and an arbitration panel has the authority to decide only the issues that have been submitted for arbitration by the parties." Metromedia Energy, Inc. v. Enserch Energy Servs., Inc., 409 F.3d 574, 578 (3d Cir. 2005); Medtronic, 247 F.3d at 54 (noting that "arbitrators have the authority to resolve disputes only if the parties have agreed to submit to arbitration" and that "there must be sufficient evidence that the parties consented to arbitration in an express agreement").

In two recent cases, the Supreme Court has provided guidance on the sometimes vexing issue of the respective roles of the court and the arbitrators. In Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), an investor (Howsam), complaining that her broker (Dean Witter) had made misrepresentations in its investment advice, sought arbitration before the National Association of Securities Dealers ("NASD").

7

Id. at 82.  Dean Witter filed suit in federal court seeking a declaration that Howsam's suit was untimely.  Id.  The district court dismissed the action, holding that the NASD arbitrator should decide the issue.  Id.

The Court of Appeals for the Tenth Circuit reversed on the ground that the question of whether Howsam's claim was time-barred under a NASD arbitration rule presented a question of arbitrability for the court to decide.  Id.  The Supreme Court reversed.  It noted that although it had long recognized the liberal federal policy in favor of arbitration, the question of "whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  Id. at 83 (emphasis in original) (internal citations and quotation marks omitted).  The Court stated that whereas one might call any potentially dispositive gateway question a "question of arbitrability," "the phrase 'question of arbitrability' has a far more limited scope."  Id.  Such questions of arbitrability are raised only in "narrow circumstance[s]" where courts must determine "gateway matter[s]," such as a dispute about "whether the parties are bound by a given arbitration clause" or whether "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."  Id. at 83-84.  In contrast, the Court explained, "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide."  Id. at 84 (emphasis in original) (internal citation and quotation marks omitted).

In Howsam, the Court observed the inherent logic and efficiency of such a presumption.  "[F]or the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy — a goal of arbitration systems and judicial systems alike."  Id. at 85.  Thus, "only when there is a question regarding whether the parties should be arbitrating at all" is a question of arbitrability raised for the court to resolve.  Dockser v. Schwartzberg, 433 F.3d 421, 426 (4th Cir. 2006).  "In other circumstances, resolution by the arbitrator

8

remains the presumptive rule." Id.

The Court's plurality decision in Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003), provides further guidance as to the distinction between questions of arbitrability (for the court) and questions of arbitral procedure (for the arbitrator). Two sets of South Carolina customers who had contracted with Green Tree Financial Corp. for loans for either home improvement or home purchase filed separate actions claiming that Green Tree failed to provide them with the form legally required under South Carolina law advising that they had a right to name their own lawyers and insurance agents. Id. at 448-49. Their contracts with Green Tree provided for mandatory arbitration, and they filed separate actions in South Carolina state courts. Id. at 449. One set of plaintiffs, the Bazzles, asked the court to certify a class action, which the court did and compelled arbitration. Id. The arbitrator, proceeding with the arbitration as a class arbitration, awarded $10,935,000 in statutory damages plus attorney's fees. Id. In the other proceeding, the arbitrator certified a class in arbitration and ultimately awarded $9,200,000 in statutory damages in addition to attorney's fees. Id.

Green Tree appealed to the South Carolina Court of Appeals claiming that class arbitration was legally impermissible. Id. The South Carolina Supreme Court assumed jurisdiction and held that, if an arbitration provision is silent on the question, then class-wide arbitration is permissible. Id. at 450. The United States Supreme Court granted certiorari to consider whether the South Carolina Supreme Court's holding was consistent with the FAA. Id. In its decision, the Court held that the resolution of the threshold question of contract interpretation — "Are the contracts in fact silent, or do they forbid class arbitration as petitioner Green Tree Financial Corp. contends?" — should be "resolved in arbitration." Id. at 447.

Drawing on Howsam, the plurality reasoned that unless one finds "clear and unmistakable evidence to the contrary" in an arbitration clause, only in certain "gateway matters" will a court "assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter." Id. at 452

9

(internal quotation marks and citation omitted). Matters that concern "neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties" will not fall within this "narrow exception." Id.; see also PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 407 n.2 (2003) (rejecting argument that preliminary question of "whether the [contractual] remedial limitations at issue here prohibit an award of RICO treble damages" raised question of arbitrability for court to resolve, and concluding it presented question of contract interpretation to be resolved in arbitration); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006) (under the FAA, whether a contract is void for illegality is generally an issue for arbitrator, not court, to decide); Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 217 (3d Cir. 2007) (concluding that Green Tree reaffirms "the general division of labor" between arbitrator and judge as "articulated in Howsam"). The Green Tree plurality therefore vacated the decision of the South Carolina Supreme Court and remanded the case "so that the arbitrator may decide the question of contract interpretation — thereby enforcing the parties' arbitration agreements according to their terms." 539 U.S. at 454.[2]

---

[2]The Green Tree plurality was written by Justice Breyer, joined by Justices Scalia, Souter and Ginsberg. Justice Stevens authored a short concurrence, providing the fifth vote for the plurality's judgment. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977) (internal quotation marks and citation omitted). Justice Stevens did not join because he concluded that, since (a) the South Carolina Supreme Court's decision as to the availability of class arbitration was correct, and (b) petitioner Green Tree "merely challenged the merits of that decision without claiming it was made by the wrong decisionmaker," there was no need for remand. 539 U.S. at 455. He would have simply affirmed the judgment of the South Carolina Supreme Court. Id.

Justice Stevens also noted that the "[plurality] opinion

10

Thus, <u>Howsam</u> and <u>Green Tree</u> together explain why no "question of arbitrability," as the Supreme Court has recently — and narrowly — defined that phrase, has been raised here. Under section 4 of the FAA, federal courts, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," are authorized to "make an order summarily directing the parties to proceed to arbitration in accordance with the terms thereof." 9 U.S.C. § 4; <u>see also</u> 9 U.S.C. § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement . . . ."). This, the District Court has done.

As in <u>Green Tree</u>, the question here is "not whether the parties wanted a judge or an arbitrator to decide <u>whether they agreed to arbitrate a matter</u>," but rather "what <u>kind of arbitration</u>

---

expresses a view of the case close to my own," and stated his agreement with the plurality that <u>Howsam,</u> "[a]rguably[,]" compels the conclusion that "the interpretation of the parties' agreement should have been made in the first instance by the arbitrator, rather than the court." <u>Id.</u> Based on this language, therefore, we conclude that a "common denominator . . . implicitly" runs through the reasoning of the "five Justices who support the judgment" in the <u>Green Tree</u> decision. <u>Rappa v. New Castle County</u>, 18 F.3d 1043, 1057-58 (3d Cir. 1994) (internal quotation to <u>King v. Palmer</u>, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc) omitted); <u>see also</u> <u>Pedcor Mgmt. Co. Welfare Benefit Plan v. Nations Pers. of Texas, Inc.</u>, 343 F.3d 355, 358-59 (5th Cir. 2003) ("Justice Stevens did express his agreement, however, with the principle laid down by the plurality that arbitrators should be the first ones to interpret the parties' agreement. As a result, the plurality's governing rationale in conjunction with Justice Stevens's support of that rationale substantially guides our consideration of this dispute."). We recognize that the Seventh Circuit, concluding that it was only "likely," rather than certain, "that Justice Stevens agreed with the plurality that an arbitrator should be the first to interpret the agreements," has decided that identification of "a controlling rationale" in <u>Green Tree</u> would be too presumptuous, <u>Employers Ins. Co. of Wausau v. Century Indem. Co.</u>, 443 F.3d 573, 581 (7th Cir. 2006), but we decline to adopt that conclusion.

11

proceeding the parties agreed to." 539 U.S. at 452 (emphasis in original). In this case, the parties agree that they agreed to arbitrate the matter — the question is merely whether they agreed to individualized or consolidated proceedings as a matter of procedure. Therefore, "any doubt" here about the "scope of arbitrable issues should be resolved in favor of arbitration." Id. at 445 (internal quotation marks and citation omitted).[3]

The Underwriters protest that there is no contractual authority for a threshold proceeding before an arbitrator on consolidation under each program. Yet, Westchester Fire's demands for arbitration under the Comprehensive Catastrophe and Special Contingency treaties are based on express

---

[3]The Underwriters rely in part on Certain Underwriters at Lloyd's v. Century Indem. Co., 2005 WL 1941652, at *1 (E.D. Pa. Aug. 1, 2005), where a district court denied an insurance company's request to order one arbitration panel for each reinsurance program between the parties, concluding that "none of the reinsurance contracts provide for consolidation of arbitration proceedings, and that [the reinsurers have] not consented to the [consolidated arrangement.]"

The district court in that case did not address the reasoning of Howsam and Green Tree, and relied in its decision on an unpublished, pre-Green Tree decision of this court. Moreover, the matter before the district court in that case — competing requests, where one party sought to compel arbitration as it was provided for in each reinsurance contract, while the other sought to group each arbitration by the reinsurance program — is distinguishable from the instant case, in which we consider a request to have the decision of whether or not to consolidate be heard by an arbitrator. See In re Allstate Ins. Co. and Global Reinsurance Corp., 2006 WL 2289999, at *1 (S.D.N.Y. Aug. 8, 2006) (acknowledging Second Circuit precedent holding that a district court cannot consolidate arbitration proceedings arising from separate agreements to arbitrate absent the parties' agreement to allow such consolidation, but observing that "Petitioner is not asking the Court to compel consolidation. Rather, Petitioner wants to require an arbitration panel to determine whether the two disputes shall be consolidated[,]" and so selecting such a panel).

contractual language between the parties that calls for tri-partite arbitration. Whether requiring the Underwriters to select an arbitrator for each program is consistent with the contractual language will be appropriately resolved by the arbitrators once the panels are convened. Such disputes on arbitral procedure are "[i]ncluded within the scope of [the] default rule" in favor of arbitral resolution, along with "the merits of the underlying dispute." Dockser, 433 F.3d at 425, 427 (noting that, in the face of contractual silence, arbitral resolution of procedural issues is presumed, and "the onus is on the party seeking litigation on a procedural issue to show that the agreement somehow excludes that issue from arbitration").

Moreover, such an argument — that, even absent any doubt about whether a matter is arbitrable, a court must examine the contractual language for conflict with the threshold arbitration's procedure — has been rejected by a number of our sister circuits. In Employers Ins. Co. of Wausau v. Century Indemnity Co., 443 F.3d 573 (7th Cir. 2006), the Court of Appeals for the Seventh Circuit refused to accept a reinsurer's argument that "no mention of consolidation" in the agreements at issue between the parties necessarily meant that the reinsurer, Wausau, was "entitled to two separate arbitrations for the two reinsurance agreements it has with [the insured insurance company,] Century." Id. at 581, 574. The court stated that the "question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve." Id. at 577.

On the question of how the parties were then to proceed with the mechanics of the arbitration, the Wausau court acknowledged that the district court had crafted an order that required "Wausau to appoint one arbitrator and proceed to one arbitration, covering both Agreements." Id. at 581. It then considered the reinsurer's argument that the act of "ordering it to arbitrate both Agreements in one arbitration would conflict with the terms of the arbitration clauses, for example by not allowing 'each party to appoint its arbitrator.'" Id. at 581-82. The Court of Appeals soundly rejected any suggestion that the district court's order was in error. Citing both Howsam and Green Tree, the court stated,

13

We should not and will not consider this argument. The question before us is whether the parties' Agreements specify <u>who</u> is to decide whether consolidated arbitration is allowed — the court or the arbitrator. We have determined that the Agreements do not specify and that questions regarding consolidation are presumptively for the arbitrator. Wausau is free to argue at the arbitration that separate arbitrations for the First Excess Agreement and Second Excess Agreement are required under the contracts' terms. If the arbitration panel agrees, it can require the parties to proceed as it deems appropriate.

<u>Id.</u> at 582 (emphasis in original).

Similarly, in <u>Dockser</u>, the Court of Appeals for the Fourth Circuit rejected what it called a "chicken [or] egg" argument about the legitimacy of initial arbitral decisionmaking regarding procedure. In <u>Dockser</u>, the defendant, Schwartzberg, had filed a demand with the American Arbitration Association ("AAA") alleging breach of a settlement agreement he had entered into with plaintiffs regarding their real estate business. <u>Dockser</u>, 433 F.3d at 427. The settlement agreement stated that if the parties could not agree on an arbitrator, the arbitrator should be chosen pursuant to AAA rules. <u>Id.</u> at 423. Schwartzberg, in his cover letter to the AAA, requested that the dispute be arbitrated by a panel of three arbitrators pursuant to an AAA rule. <u>Id.</u> In response, plaintiffs filed suit, arguing that a clause of the parties' settlement agreement "expressly specif[ied] that a single arbitrator should hear the dispute[,]" and sought a declaratory judgment to that effect; it also requested that the court appoint a single arbitrator under section 5 of the FAA, which allows a court to designate an arbitrator or arbitrators if a party fails to avail himself of a method of appointment as specified in the parties' agreement. <u>Id.</u> at 424. Schwartzberg filed a motion to dismiss, arguing that the number-of-arbitrators question was inappropriate for judicial resolution, and the district court granted the motion. <u>Id.</u>

In light of <u>Howsam</u> and <u>Green Tree</u>, the Court of Appeals affirmed the dismissal. It concluded that the number-of-arbitrators question was not a "question of arbitrability," as the

14

parties did not "dispute that their arbitration clause is binding." Id. at 426. It also noted that, considering the relevance of AAA rules to resolution of the dispute, "[i]t is therefore not only legally proper, but eminently sensible, that the dispute here is presumptively one for the arbitral forum to resolve." Id. at 427.

The Dockser court also firmly rejected any suggestion that convening an arbitral panel arguably in violation of contractual language would be per se illegitimate:

> Plaintiffs . . . [raise] the novel argument that arbitrating the question here would present an absurd 'chicken and egg' problem. They claim that if x number of arbitrators decide that there ought to be y number of arbitrators, the decision becomes ipso facto invalid. But many procedural questions exhibit this supposed bootstrapping problem, and accepting plaintiffs' argument would nullify the rule that these questions are arbitrable. Under plaintiffs' view, an arbitrator could not, for example, determine whether an arbitration agreement required arbitration in Boston instead of California, without succumbing to paralysis as to where to hold the proceedings necessary to decide the issue. A similar conundrum would arise regarding whether the permissibility of consolidating separate arbitration proceedings is an issue for a single arbitrator or a host of different ones. We need not countenance such a result, which would defy both the Supreme Court and the congressional policy favoring arbitration. By presumptively remitting procedural questions to the arbitral body, the FAA necessarily recognizes that decisionmaker's authority to answer them.

Id. at 427 (emphasis added) (internal quotation marks and citations omitted).

Other courts have held similarly. See Shaw's Supermarkets, Inc. v. United Food and Commercial Workers Union, 321 F.3d 251, 254 (1st Cir. 2003) ("The issue before us is who should make the determination as to whether to consolidate the three grievances [under three separate collective bargaining

15

agreements] into a single arbitration: the arbitrator or a federal court. Since each of the three grievances is itself concededly arbitrable, we think the answer is clear. Under <u>Howsam</u> . . . this is a procedural matter for the arbitrator."); <u>Pedcor Mgmt. Co. Welfare Benefit Plan</u>, 343 F.3d at 363 (noting, in dictum, that "[t]o the extent that the issue of consolidation in arbitration is analogous to class arbitration, <u>Green Tree</u>'s holding that arbitrators, not courts, decide whether an agreement provides for class arbitration would appear to overrule [a prior Fifth Circuit case holding that a court should determine whether a contract provides for consolidated arbitration]"); <u>Blimpie Int'l Inc. v. Blimpie of the Keys</u>, 371 F. Supp. 2d 469, 473-74 (S.D.N.Y. 2005) ("Whether an arbitration proceeding should be consolidated with one or more other arbitration proceedings is a question . . . . properly addressed by the arbitrator. . . . Like the question of class arbitration in <u>Green Tree</u>, the question of consolidated arbitration here concerns the nature of the arbitration proceeding agreed to, not whether the parties agreed to arbitrate. . . . [C]onsolidation is a procedural issue.").

Finally, we note that Westchester Fire has raised an argument that, because of certain "continuity" clauses appearing in the different wordings and layers of each treaty, each treaty is in essence one contract. The Underwriters, of course, disagree. We note that full consideration of this issue by this court would be inappropriate. According to the Underwriters, the complete universe of reinsurance writings relevant to the parties' disputes may not be before this court. In any event, this "disputed issue of contract interpretation" is one which expert "[a]rbitrators are well situated to answer." <u>Green Tree</u>, 539 U.S. at 450, 453.

## IV.

In light of the above authority, the parties' agreement to arbitrate their disputes, contractual silence as to the consolidation issue, and the longstanding federal policy favoring arbitration, we see no reason why this procedural issue should not be resolved in arbitration. Accordingly, we will affirm the District Court's order.